**17 MAG   3817**

Approved: _____
ANDREW THOMAS
Assistant United States Attorney

Before:   THE HONORABLE GABRIEL W. GORENSTEIN
United States Magistrate Judge
Southern District of New York

- - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA          :   **SEALED COMPLAINT**

   - v. -                          :   Violations of
                                       18 U.S.C. §§ 922(g) and 2,
DAVID RUSH,                        :   and 21 U.S.C. § 846

      Defendant.                   :   COUNTY OF OFFENSE:
                                       BRONX
- - - - - - - - - - - - - - - - - - x

SOUTHERN DISTRICT OF NEW YORK, ss.:

     MARIA LOPEZ, being duly sworn, deposes and says that she is a Detective with the New York City Police Department ("NYPD"), and charges as follows:

                         COUNT ONE

     1.    From at least in or about October 2016, up to and including in or about May 2017, in the Southern District of New York and elsewhere, DAVID RUSH, the defendant, and others known and unknown, intentionally and knowingly did combine, conspire, confederate, and agree together and with each other to violate the narcotics laws of the United States.

     2.    It was a part and an object of the conspiracy that DAVID RUSH, the defendant, and others known and unknown, would and did distribute and possess with intent to distribute a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

3.    The controlled substance that DAVID RUSH, the defendant, conspired to distribute and possess with intent to distribute was twenty-eight grams and more of mixtures and substances containing a detectable amount of cocaine base, in the form commonly known as "crack cocaine," in violation of Title 21, United States Code, Section 841(b)(1)(B).

(Title 21, United States Code, Section 846.)

COUNT TWO

4.    On or about May 18, 2017, in the Southern District of New York and elsewhere, DAVID RUSH, the defendant, after having been previously convicted in a court of a crime punishable by imprisonment for a term exceeding one year, knowingly did possess in and affecting commerce, a firearm, to wit, a 9mm Taurus Model PT-92C pistol, which had previously been shipped and transported in interstate and foreign commerce.

(Title 18, United States Code, Sections 922(g)(1) and 2.)

The bases for my knowledge and for the foregoing charges are, in part, as follows:

5.    I am a Detective with the NYPD, Gun Violence Suppression Division, and have been with the NYPD for approximately 10 years. I have been personally involved in the investigation of this matter. This affidavit is based upon my personal participation in the investigation, my examination of reports and records, and my conversations with other law enforcement agents and other individuals. Because this Affidavit is being submitted for the limited purpose of demonstrating probable cause, it does not include all of the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

6.    Based on conversations with other members of the NYPD, a review of NYPD evidence vouchers, and a review of NYPD narcotics laboratory tests, I know that on or about October 13, 2016, a person ("CC-1") was arrested in possession of, among other things, (a) three firearms, (b) approximately 3.059 grams of cocaine base in the form known as "crack," and (c) numerous empty zip lock bags outside of the building at 2351 Walton Avenue, in the Bronx.

2

7.    Based on a review of recorded prison calls made by CC-1 following his arrest, and a review of NYPD and New York Department of Corrections and Community Supervision records, I know that (a) CC-1 was initially detained in a New York State prison facility after his arrest and (b), while detained in a New York State facility, CC-1 placed at least one outgoing call during which CC-1, in substance and in part, said that he had been selling for "Rush." Based on my training and experience, and the context of CC-1's remarks, I believe that CC-1 was referring to DAVID RUSH, the defendant, and the sale of narcotics.

8.    Beginning in or about October 2016, an NYPD officer acting undercover (the "UC"), began purchasing quantities of crack cocaine from DAVID RUSH, the defendant, in Manhattan and Bronx, New York. Based on conversations with the UC, a review of the UC's reports, a review of video recordings of certain buys, a review of recorded calls between the UC and RUSH, a review of a prior booking photograph of RUSH, and my participation in surveillance of RUSH, I have learned, in part, the following:

a.    On or about October 20, 2016, the UC met an indivual who used the name "Rush," in Manhattan, New York. During the meeting, "Rush" provided the UC with the call number of a cellphone for the purpose of facilitating future narcotics transactions with the UC. Based on my review of a prior booking photograph of DAVID RUSH, the defendant, and video recordings and surveillance of "Rush," I know that "Rush" is, in fact, DAVID RUSH.

b.    Between on or about October 25, 2016 and on or about May 8, 2017, the UC purchased crack cocaine from RUSH on approximately 22 occasions in either Manhattan or the Bronx. Approximately 21 of those transactions were video recorded.

c.    Transactions between the UC and RUSH have involved weights ranging from fractions of a gram to approximately 3 grams, have cumulatively totaled more than 28 grams in weight, and had prices ranging from $60 to $300. For example:

i.    On or about November 2, 2016, near East 183 Street and Morris Avenue in Bronx, New York, the UC gave RUSH approximately $100 in exchange for approximately 10 zip lock baggies containing a white rocky substance (the "November 2 Buy").

3

ii.    On or about February 10, 2017, near 2239 Creston Avenue in Bronx, New York, the UC gave Rush approximately $200 in exchange for approximately 26 zip lock baggies containing a white rocky substance (the "February 10 Buy").

iii.    On or about May 8, 2017, the UC contacted RUSH by telephone to arrange for the purchase of $200 worth of crack cocaine. RUSH, in substance and in part, directed the UC to meet him at 2259 Creston Avenue in Bronx, New York. The UC then entered the building at 2259 Creston Avenue and encountered a male ("CC-2"), who handed the UC a bag containing approximately 25 zip lock bags of a white rocky substance (the "May 8 Buy"). The UC then called RUSH, who, in substance and in part, directed the UC to pay CC-2. UC then handed $200 in pre-recorded buy money to CC-2.

d.    Based on a review of NYPD narcotics laboratory analysis reports and evidence vouchers, I have learned that (a) the November 2 Buy contained approximately 1.1 grams of a substance containing cocaine base, (b) the February 10 Buy contained approximately 2.91 grams of crack cocaine, and (c) the May 8 Buy contained 2.63 grams of crack cocaine.

9.    Based on conversations with an NYPD officer ("Officer-1"), a review of surveillance video obtained from the building at 2259 Creston Avenue (the "Building"), a review of a prior booking photograph of DAVID RUSH, the defendant, and a review of NYPD reports and evidence vouchers, I have learned, in part, the following:

a.    On or about May 17, 2017, Officer-1 and his partner ("Officer-2") from the Bronx Gang squad were on vehicle patrol. During that patrol, at approximately 4:45 p.m., the officers stopped their unmarked patrol car in front of the Building. At that time, two men stood outside the building. Based on my past surveillance of DAVID RUSH, my review of a prior booking photograph of RUSH, and my review of surveillance video from the Building, I know that one of the two men was DAVID RUSH.

b.    After noticing the officers, RUSH and the other man ("Male-1") quickly entered the Building. The officers followed RUSH and Male-1 inside. RUSH and Male-1 then ran up the interior stairwell of the Building. The officers eventually arrested Male-1. RUSH escaped.

4

c.    Surveillance cameras from in and around the Building recorded RUSH as he ran away from the officers and through the Building. Based a review of that surveillance video, I know that during his flight, RUSH ran up the interior stairwell of the Building while holding a firearm ("Firearm-1"), and threw Firearm-1 to the floor of a hallway in Building.

d.    Officer-2 retrieved and vouchered Firearm-1, a 9mm Taurus Model PT-92C pistol.

10.    Based on correspondence with an agent of the Bureau of Alcohol, Tobacco, Firearms and Explosives trained in the identification of firearms, I understand that 9mm Taurus Model PT-92C pistols are manufactured outside of New York State.

11.    Based on a review of criminal history records for DAVID RUSH, the defendant, I have learned that (a) on or about July 7, 2010 in Bronx County Supreme Court, RUSH was convicted of attempted criminal possession of a weapon, in violation of New York Penal Law 265.03, a felony, and (b) on or about May 8, 2008 in Bronx County Supreme Court, RUSH was convicted of criminal possession of a weapon, in violation of New York Penal Law 265.03, a felony.

WHEREFORE, deponent respectfully requests that a warrant issue for the arrest of DAVID RUSH, the defendant, and that he be arrested and imprisoned or bailed, as the case may be.

_____
MARIA LOPEZ
Detective
New York City Police Department

Sworn to before me this
19th day of May 2017

_____
THE HONORABLE GABRIEL W. GORENSTEIN
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK

5